UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

TEAMSTERS LOCAL 456 PENSION, HEALTH
& WELFARE, ANNUITY, EDUCATION &
TRAINING, INDUSTRY ADVANCEMENT, and
LEGAL SERVICES FUNDS by Louis A. Picani,
Joseph Sansone, Dominick Cassanelli, Jr., Saul
Singer, Ross Pepe, and Jeffrey Isaacs as Trustees
and fiduciaries of the Funds, and WESTCHESTER
TEAMSTERS LOCAL UNION NO. 456,

                          Plaintiffs,

            - against -

LUMIA LEASING INC. a/k/a LUMIA LEASING,
INC., CRL TRANSPORTATION, INC. and
CHRISTOPHER LUMIA, INDIVIDUALLY,

                          Defendants.
------------------------------------------------------------------ x

Civil Action No.

## COMPLAINT

Plaintiffs Teamsters Local 456 Pension, Health & Welfare, Annuity, Education &

Training, Industry Advancement, and Legal Services Funds by Louis A. Picani, Joseph Sansone,

Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs as Trustees and fiduciaries

of the Funds (the "Funds"), and Westchester Teamsters Local Union No. 456 ("Local 456,"

together with the Funds, "Plaintiffs"), for their complaint allege as follows:

## INTRODUCTION

1.      This is an action brought to:  (a) collect from defendant Lumia Leasing

Inc. a/k/a Lumia Leasing, Inc. ("Lumia Leasing") $212,639.58 in fringe benefit contributions,

deductions and statutory damages in a judgment (the "Judgment") entered in Civil Action No.

7:18-CV-02056 (KMK) (the "Original Action") against defendant CRL Transportation, Inc.

("CRL"), with the amounts awarded in judgment deemed due under the Employee Retirement

Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA");

(b) collect from the Defendants, jointly and severally, ongoing fringe benefits and damages due by Lumia Leasing and CRL (Lumia Leasing and CRL, collectively, and individually, the "Companies"); and (c) audit the Companies' books and records for all unaudited periods relevant to this litigation.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§185(a), 1132(a)(3), 1132(e)(1), 1132(f) and 1145.

3.      Venue lies in this district under 29 U.S.C. §1132(e)(2), as Plaintiffs are administered in this district.  Venue also lies in this district under 29 U.S.C. §185(a).

## THE PARTIES

4.      Louis A. Picani, Joseph Sansone, Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs are Trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. §1002(21)(A), as they have discretion and control over the assets and administration of the Funds.

5.      The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§1002(3) and 1002(37) and Sections 302(c)(5) and (9) of the LMRA, 29 U.S.C. §§186(c)(5) and (9), with their principal place of business within the Southern District of New York at 160 South Central Avenue, Elmsford, New York 10523.

6.      The Funds are administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

7.      Local 456 is an unincorporated association maintaining its principal offices within the Southern District of New York at 160 South Central Avenue, Elmsford, New York 10523.

8.      Local 456 is a labor organization in an industry effecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a).

9.      The Funds are maintained pursuant to Agreements and Declarations of Trust (the "Trust Agreements") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with Local 456 and providing benefits to eligible participants.

10.     The collective bargaining agreements and the Trust Agreements set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining agreement and Trust Agreement terms.  Accordingly, the Trustees have legal right to bring this suit under 29 U.S.C. §1132(a)(3) and 29 U.S.C. §1145.

11.     Upon information and belief, defendant Lumia Leasing is a domestic corporation, licensed to do business in the State of New York, having its principal places of business and office located at 12 Bass Road, Mahopac, New York 10541, and is, and at all times relevant to this action has been, an "employer" within the meaning of 29 U.S.C. §1002(5).

12.     Upon information and belief, Defendant CRL is a domestic corporation, licensed to do business in the State of New York, having its principal places of business and office located at 12 Bass Road, Mahopac, New York 10541, and is, and at all times relevant to this action has been, an "employer" within the meaning of 29 U.S.C. §1002(5).

13.     Upon information and belief, for all times material, Defendant Christopher Lumia has been the owner and sole shareholder of the Companies and has been vested with management control over each of them.

## FACTUAL BASIS FOR CLAIM

The Collective Bargaining Agreements, the Trust Agreements, the
Collections Policy and the Obligation to Report and Contribute to Plaintiffs

14.     CRL has at all times relevant to this action been party to a collective

bargaining agreement with Local 456 (collectively, and individually, the "CBA").

15.     Pursuant to the CBA, CRL is bound by the terms and conditions, rules and

regulations of the Trust Agreements and the Funds' Policy for Collection of Delinquent

Contributions (the "Collections Policy").

16.     The CBA, Trust Agreements, and Collections Policy require CRL to remit

contributions to the Funds.

17.     The CBA further obligates CRL to deduct from each of its employees'

wages specified amounts and pay these amounts to Local 456, presenting union dues and other

monies.

18.     In addition to the above and pursuant to the CBA, the Trust Agreements,

and the Collections Policy, together with ERISA Sections 515 and 502(g)(2), 29 U.S.C. §§1145

and 1132(g)(2) and LMRA Section 301(a), 29 U.S.C. §185(a), in the event CRL fails to timely

remit contributions and deductions, CRL becomes liable not only for the amount of contributions

and deductions due, but also for the following:  (1) interest on the unpaid and untimely paid

Funds' contributions, at the rate of ten percent (10%) per annum; (2) liquidated damages equal to

ten percent (10%) of those delinquent contributions; and (3) attorneys' fees, audit fees, and the

costs of collection.

19.     The Trust Agreements and Collections Policy require CRL to remit the

contributions by the first (1st) day of the month following the month during which the hours

were worked by employees.

20.     Pursuant to the CBA, Trust Agreements and Collections Policy, the Defendants must timely report in a monthly basis the number of hours worked by all their employees and subcontractors performing bargaining unit work.

21.     Defendants are contractually and statutorily obligated to maintain accurate and complete books and records for the number of hours of bargaining work performed by all their employees and subcontractors.

22.     The CBA, Trust Agreements, and Collections Policy further obligate the Defendants to permit Plaintiffs, on demand, to check, examine, and audit Defendants' books and records, including their payroll records, relating to hours worked by their subcontractors and their employees, including union and non-union, bargaining unit, and non-bargaining unit employees.

The Original Action

23.     Plaintiffs filed the Original Action on March 7, 2018, seeking to collect fringe benefit contributions and deductions for hours worked by CRL's employees.

24.     During the pendency of the Original Action, auditors retained by Plaintiffs performed a payroll examination of CRL's books and records for the period from May 22, 2017 through September 30, 2018 (the "Examination").

25.     The Examination reflected that for the audited period CRL failed to remit $145,592.86 in fringe benefit contributions and deductions.

26.     Based upon the Court's review and acceptance of the accuracy of the Examination, the Court entered the Judgment for $212,639.58, consisting of:  (a) $145,592.86 in fringe benefit contributions and deductions for the periods May 22, 2017 through September 30, 2018; (b) $12,518.23 in interest; (c) $14,293.28 in liquidated damages; and (d) $40,235.21 in

attorneys' fees and costs); while also holding that the Plaintiffs are entitled to post-judgment interest at the rate provided for by 29 U.S.C. §1961(a).

27.     The Judgment remains unsatisfied in full.

The Relationship Between the Companies

28.     The Companies share common management.

29.     Christopher Lumia is, and at all times relevant to this action has been, the president of CRL.

30.     Christopher Lumia is, and at all times relevant to this action has been, the president of Lumia Leasing.

31.     Christopher Lumia is, and at all times material to this action has been, the sole shareholder of CRL.

32.     Christopher Lumia is, and at all times material to this action has been, the sole shareholder of Lumia Leasing.

33.     For all times material to this action, to the exclusion of others, Christopher Lumia has been vested with decision-making authority for CRL.

34.     For all times material to this action, to the exclusion of others, Christopher Lumia has been vested with decision-making authority for Lumia Leasing.

35.     For times material to this action, the Companies shared centralized control of labor relations.

36.     For all times material to this action, Christopher Lumia made all management decisions for the Companies, including decisions relating to the Companies' collectively bargained relationship with the Plaintiffs.

37.     By August 23, 2018 deposition, Christopher Lumia stated that he "set [Lumia Leasing] up so if I had to put my auto in a different name to save, you know, on insurance."

38.     By August 23, 2018 deposition, Christopher Lumia testified that he was the sole owner of Lumia Leasing, that "there's been no activity through this business," and that it has no employees and no operations.

39.     By November 21, 2019 deposition, Christopher Lumia testified that CRL permanently ceased operations.

40.     By November 21, 2019 deposition, Christopher Lumia testified that Lumia Leasing's operations had changed and that his August 23, 2018 testimony no longer accurately reflected its state of business operations.

41.     By November 21, 2019 deposition, Christopher Lumia testified:

> We basically resumed business operations under Lumia Leasing to  -- to -- for insurance purposes, and E-ZPass had suspended my registrations under CRL for nonpayment.  So in order to try and keep going, I started operating under Lumia Leasing.

42.     At times material to this action, the Companies shared a common business purpose.

43.     Prior to its closure, CRL providing truck hauling services for various customers.

44.     By November 8, 2019 affidavit, Brian Murphy, the designated representative for Atlantic Salt, Inc. attested to the following:

> In June or July 2019, Chris Lumia called Atlantic and informed it that Lumia Leasing, Inc., 12 Bass Road, Mahopec, New York 10541, would be available to provide hauling services.  Atlantic has used Lumia's services since then and recently received Invoice No. 1127 from Lumia Leasing, Inc. in the amount of $12,999.83. In the ordinary course of its business, Atlantic would pay this

invoice during the week of November 4, 2019. In light of the
Restraining Notice concerning CRL Transportation, Inc., Atlantic
will delay payment of the invoice for 30 days from the date of this
Response to Plaintiff's Questionnaire. If no further instructions or
orders are received from the court, and in light of the fact that
Lumia Leasing, Inc. appears to be a separate legal entity, Atlantic
will pay Lumia's invoice to Lumia on or after December 8, 2019.

45.     By November 21, 2019 deposition, Christopher Lumia testified that a
restraining notice relating to CRL sent to Atlantic Salt, Inc. stopped him from using CRL for his
business.

46.     Upon information and belief, Christopher Lumia then transferred his
business from CRL to Lumia Leasing.

47.     A principal purpose of transferring business from CRL to Lumia Leasing
was to evade and avoid the payment of the Judgment to the Funds.

48.     At times material to this action, the Companies were run by Christopher
Lumia without regard for corporate formalities.

49.     At times material to this action, Christopher Lumia deliberately caused the
Companies to exchange assets without formalities.

50.     At times material to this action, Christopher Lumia deliberately caused
CRL to become undercapitalized and incapable of paying of the Judgment by and through his
ownership of Lumia Leasing and diversion of moneys due to CRL to Lumia Leasing.

51.     By November 21, 2019 deposition, Christopher Lumia testified as follows:

Q: Does Lumia Leasing receive any money from Bilotta or Dakota
-

A: No.

Q: - on behalf of CRL?

A: When I originally wanted to go non-union after the audit
incident, I tried to bill Peckham through Lumia Leasing, and they

- 8 -

would not give me a vendor number because of what was going on with CRL.  So nothing ever got done with Lumia Leasing.

Q: Did you try that with any of the other businesses?

A: No.

Q: Just with Peckham?

A: Yes. Because I through I was going to be going in a non-union direction.

52.     At times material to this action, the Companies shared, leased, utilized, and/or had common equipment.

53.     By November 21, 2019 deposition, Christopher Lumia testified that CRL's then only possessions were five (5) motor vehicles.

54.     Upon information and belief, the vehicles referenced by Christopher Lumia at his November 21, 2019 deposition are:  (i) 2017 Semi Trailer (VIN No. 5MADA3344HCO40020); (ii) 2017 Semi Trailer (VIN No. 5MADA3448HCO36003); (iii) 2010 Peterbilt 389 Tractor (VIN No. IXPXD40X2AD113254); (iv) 2005 Peterbilt 379 Tractor (VIN No. 1NP5DB0XX5N847338); and (v) Caterpillar 232D Skid Steer Loader (Serial No. DPRO0290).

55.     By November 21, 2019 deposition, Christopher Lumia testified that CRL's remaining vehicles were "re-leased" to Lumia Leasing.

56.     A principal purpose of the "re-leasing" of CRL's remaining vehicles was to avoid payment of the Judgment, by and through turnover proceedings initiated by the Plaintiffs.

57.     Despite repeated demand, the Companies and the lessors, H.O. Penn Leasing and Jim Reed's Truck Sales, have not produced the requested documents related to the supposed "re-lease" of the vehicles.

58.     By February 25, 2020 affidavit, Joseph Fierravante, who operates a landscaping business, attested that Lumia Leasing has been using CRL's trucks to deliver sand under the name "Lumia Leasing, Inc." as of at least November 2019.

59.     According to Mr. Fierravante's affidavit, Lumia Leasing has not even bothered to remove the name "CRL" from the side of one of the trucks.

60.     A principal purpose of transferring trucks and equipment from CRL to Lumia Leasing was to evade and avoid the payment of the Judgment to the Funds.

61.     At times material to this action, the Companies employed common drivers.

62.     At times material to this action, Christopher Lumia drove trucks for CRL.

63.     At times material to this action, Christopher Lumia drove trucks for Lumia Leasing.

64.     Upon information and belief, a principal purpose of Christopher Lumia to stop driving for CRL and begin driving for Lumia Leasing was for personal monetary gain.

65.     At times material to this action, the Companies had common employees.

66.     At times material to this action, the Companies shared a bookkeeper.

67.     At times material to this action, the Companies shared common business facilities.

68.     At times material to this action, the Companies each operated out of Christopher Lumia's home.

69.     At times material to this action, the trucks and equipment utilized by the Companies were parked and/or stored at the same yard.

Unpaid Contributions

70.     Upon information and belief, for months subsequent to the Examination covered under the Judgment, the Companies failed to contribute to Plaintiffs the full amount due of fringe benefit contributions and deductions for hours worked by the Companies' employees, plus the applicable interest, liquidated damages, attorneys' fees and costs due.

Audit Request

71.     The Companies have failed to submit their books and records to audit for periods covered by this Complaint, namely those subsequent to the Examination covered by the Judgment.

Other Amounts

72.     On information and belief, additional fringe benefit contributions and deductions, interest, liquidated damages, audit fees, and attorneys' fees and costs will continue to become due and owing by the Defendants to the Plaintiffs during the pendency of this action.

## COUNT I — THE JUDGMENT

73.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

74.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a fiduciary may bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan[,]" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. §1132(a)(2)(B).

75.     Section 4212(c) of ERISA, 29 U.S.C. §1392(c) provides:  "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

76.     Upon information and belief, a principal purpose of the transfer of business and equipment from CRL to Lumia Leasing was to evade and avoid the payment of the Judgment.

77.     Accordingly, the Judgment should be enforced and collected from Lumia Leasing as if it were CRL.

## COUNT II — ALTER EGO, SINGLE
## EMPLOYER, AND/OR JOINT EMPLOYER

78.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

79.     Lumia Leasing is jointly and severally liable with CRL for the Judgment, the fringe benefits, deductions, and attendant damages due to the Funds based on its single entity, alter ego, single employer, and/or joint employer relationship with CRL.

## COUNT III — ERISA

80.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

81.     Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

82.     The Companies' failure to pay fringe benefit contributions interest, liquidated damages, and attorneys' fees and costs owing to the Funds violates the Trust Agreement and Collections Policy, which are incorporated into the CBA, and thus gives rise to an action under ERISA Section 515.

83.    Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that:

> In any action under this subchapter by a fiduciary for or on behalf
> of a plan to enforce [Section 515] in which a judgment in favor of
> the plan is awarded, the court shall award the plan,
> the unpaid contributions,
> (a)    interest on the unpaid contributions,
> (b)    an amount equal to the greater of
>         (i)    interest on the unpaid contributions or;
>         (ii)    liquidated damages provided for under the plan in an
>              amount not in excess of 20 percent (or such higher
>              percentage as may be permitted under Federal or State law)
>              of the [unpaid contributions],
> (c)    reasonable attorneys' fees and costs of the action, to be paid by the
>         defendant, and
> (d)    such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions
> shall be determined by using the rate provided under the plan….

84.    The Funds are thus entitled under ERISA Section 502(g)(2) to unpaid fringe benefit contributions, interest, liquidated damages, and attorneys' fees and costs on all unpaid and late-paid fringe benefit contributions and deductions.

## COUNT IV — ERISA

85.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

86.    The Companies, by virtue of their failure to submit their books and records to audit for periods post the Examination covered by the Judgment, are statutorily liable under the CBA, Trust Agreements, Collections Policy and ERISA, and are subject to an injunction ordering them to submit immediately to such audit and is required to pay the fringe benefit contributions and deductions due according to such audit, interest, liquidated damages, audit fees, attorneys' fees and costs.

## COUNT V — ERISA

87.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

88.     ERISA Section 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D), provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses."

89.     ERISA Section 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D), also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law.

90.     The Trust Agreements provide in pertinent part that title to all monies paid into and/or due and owing to the Funds vested in and remains exclusively in the Trustees of the Funds, so outstanding and withheld contributions constitute plan assets.

91.     As a result of work performed by the Defendants under the CBA, Defendants, upon information and belief, received substantial sums of money related to projects intended to pay, among other things, the wages and benefits of employees furnishing and supplying labor.

92.     The Defendants were fiduciaries with respect to the plan assets that they failed to timely remit to the Funds.

93.     Upon information and belief, Christopher Lumia owned, controlled, and dominated the affairs of the Companies, and he purportedly acted on behalf of and in the interest of the Companies, and he carried on the business of the Companies for his own personal ends.

94.     Upon information and belief, Christopher Lumia withheld, permitted the withholding of, or authorized the withholding of contributions to the Funds, and Christopher

Lumia dealt with plan assets for his own personal use and benefit although the plan assets rightfully belonged to the Funds.

95.     Upon information and belief, Christopher Lumia had managerial discretion and control over the Companies, made all decisions on behalf of the Companies, acted on behalf of and in the interest of the Companies, and made all decisions concerning payments by the Companies.

96.     Upon information and belief, Christopher Lumia determined which creditors the Companies would pay, determined when the Companies would pay the Funds, determined how much money would be paid to the Funds, determined which employees of the Companies would be reported to the Funds, and exercised control over money due and owing to the Funds.

97.     Upon information and belief, Christopher Lumia commingled or permitted the commingling of assets of the Funds with the Companies' general assets and used the Funds' assets to pay other creditors of the Companies rather than forwarding the assets to the Funds.

98.     Upon information and belief, while retaining Plaintiffs' contributions, Christopher Lumia transferred, applied, or diverted, or permitted the transfer, application, use, or diversion of, the Funds' assets for purposes other than the Funds without first making payment to Funds.

99.     The transfer of the assets to persons other than the Funds described in this Complaint occurred, and/or the use of the assets for purposes other than those permitted by the Funds occurred, with the knowledge and/or at the direction of, Christopher Lumia.

100.    By withholding the contributions from one or more of the Funds, Christopher Lumia received and retained for his own personal use and benefit, monies which

were rightfully assets of the Funds in violation of ERISA Section 404(a)(1)(A), 29 U.S.C.

§1104(a)(1)(A).

101.    By withholding the contributions from one or more of the Funds,

Christopher Lumia failed to abide by the documents and instruments governing the Funds in

violation of ERISA Section 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

102.    To the extent Christopher Lumia acting in his capacity as corporate

officer, director, and/or shareholder, abused his position as fiduciary by permitting, directing, or

instigating this transfer, application, or diversion in a manner contrary to his fiduciary

obligations and his actions are a breach of trust under ERISA, 29 U.S.C. §§1104, 1106, and

1109.

103.    By reason of the wrongful diversion and/or conversion of the Funds'

assets by Christopher Lumia, the Funds have not been paid monies rightfully due to them.

104.    As a result of the breaches of fiduciary duty described above, Christopher

Lumia is liable to the Funds:  (i) for the fringe benefit contributions due and owing to the Funds;

plus (ii) the interest at the consolidated rate of return of the Funds' investments; plus (iii)

attorneys' fees and costs of collection; and (iv) to restore to the Funds any profits that

Defendants made through use and retention of the assets of these Funds.

**COUNT VI — ERISA**

105.    Plaintiffs repeat and reallege the allegations set forth in the preceding

paragraphs.

106.    Absent an exemption, ERISA Sections 406(a)(1)(A) and (B), 29 U.S.C.

§§1106(a)(1)(A) and (B), makes it unlawful for fiduciaries to permit ERISA covered plans to

engage in certain transactions with parties in interest, including transactions that exchange

property or extend credit.

107.     Absent an exemption, ERISA Sections 406(b)(1)-(3), 29 U.S.C. §§1106(b)(1)-(3), makes it unlawful for fiduciaries to deal with plan assets for their personal account.

108.     At all times relevant herein, the Defendants were parties in interest with respect to the Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Sections 3(14)(A), (C) and (E), 29 U.S.C. §§1002(14)(A), (C), and (E).

109.     To the extent that Christopher Lumia has withheld, permitted the withholding of, or authorized the withholding of the contributions from one or more of the Funds, Christopher Lumia has dealt with the plan assets in his own interest and/or exchanged property or extended credit from plan assets for his own personal use and benefit in violation of ERISA Section 406, 29 U.S.C. §1106, and he has received and retained from the Funds for, upon information and belief, his own personal use and benefit, monies which are rightfully assets of the Funds.

110.     To the extent that Christopher Lumia has withheld, received, and retained the contributions, or allowed the withholding and retention of contributions, Christopher Lumia, as a party in interest, has impermissibly used the assets of one or more of the Funds in contravention of ERISA Section 406, 29 U.S.C. §1106, the interests of the Funds and the interests of the Funds' fiduciaries, participants, and beneficiaries.

111.     As a result of the breaches of fiduciary duty described above, Christopher Lumia. is liable to the Funds:  (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) the interest at the consolidated rate of return of the Funds' investments; plus (iii) the attorneys' fees and costs of collection; and (iv) to restore to the Funds any profits that Defendants made through use and retention of the assets of these Funds.

## COUNT VII — TO PIERCE THE CORPORATE VEIL

112.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

113.    Upon information and belief, throughout his operation of the Companies as the sole controlling corporate official, Christopher Lumia regularly failed to observe corporate formalities.

114.    Upon information and belief, at all times relevant to this action Christopher Lumia exercised complete dominion over the Companies.

115.    Upon information and belief, Christopher Lumia dominated, controlled, and interfered with the operation of the Companies to its detriment and the detriment of its creditors.

116.    Upon information and belief, Christopher Lumia fraudulently conveyed and/or attempted to fraudulently convey CRL's corporate funds to Lumia Leasing, looting its corporate assets without providing adequate assets for the payment of amounts due to Plaintiffs pursuant to the Judgment.

117.    Christopher Lumia, as an officer and director of the Companies, intentionally caused CRL to become insolvent and incapable of satisfying its debt to Plaintiffs pursuant to the Judgment.

118.    Based upon the above and other forms of misconduct, Christopher Lumia utilized the corporate form of the Companies to perpetrate a fraud against Plaintiffs and is therefore personally liable to Plaintiffs.

## COUNT VIII — INJUNCTIVE RELIEF

119.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

120.     If this Court does not enjoin the Defendants from further violations of ERISA, the LMRA, the CBA, Trust Agreements, and the Collections Policy, Plaintiffs will be further damaged as a result thereof in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

121.     The Defendants have failed to comply with their obligations to Plaintiffs, despite due demand for compliance, and unless this Court enjoins Defendants from violating ERISA, LMRA, the CBA, Trust Agreements, and the Collections Policy, Defendants will continue to fail to timely remit contributions, deductions, and monthly remittance reports described above, causing Plaintiffs and the beneficiaries of Plaintiffs to incur additional serious and irreparable harm by further burdening and obstructing the administration and operation of Plaintiffs and endangering the payment of promised benefits from Plaintiffs to qualified beneficiaries.

122.     The Defendants' failure to comply with its obligations to Plaintiffs has reduced the corpus and income of the Funds thereby jeopardizing the stability and soundness of Plaintiffs as well as the ability to pay benefits.

123.     The Defendants' failure to comply with their obligations to Plaintiffs may cause enough instability to Plaintiffs' financial affairs such that participant benefits may be reduced or terminated.

124.     Because the Defendants continue to fail to comply with their obligations to Plaintiffs, new delinquencies are now being created monthly, again depriving the Funds of adequate monies to pay promised benefits which in turn could cause the foregoing irreparable harm to be intensified in magnitude.

125.     Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

126.     Unless this Court enjoins the Defendants from breaching ERISA, LMRA, the CBA, Trust Agreements, and the Collections Policy, and unless Defendants are compelled to remit all monies and reports that become due or are determined to be due to Plaintiffs whether arising before or after commencement of the action, greater injury will be inflicted upon the Funds, their Trustees, participants and beneficiaries, by denial of relief than could possibly be inflicted upon Defendants by granting such relief.

## COUNT IX — LMRA

127.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

128.     Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

129.     By failing to pay the contributions and other amounts owing, the Defendants have violated the CBA, Trust Agreement, and Collections Policy, which is incorporated into the CBA.

130.     The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment:

1.     Declaring that the Companies are a single entity and single employer and/or joint employers and/or alter egos and/or successors.

2.      Declaring that Christopher Lumia individually dominated and controlled the Companies and disregarded the corporate formalities between them, and as entities with interests separate from their own.

3.      Declaring that the transfer of business from CRL to Lumia Leasing constituted a transaction or series of transactions designed to evade or avoid payment of the Judgment, plus additional amounts due Plaintiffs.

4.      Deeming Lumia Leasing financially liable for the Judgment, plus interest.

5.      Deeming Christopher Lumia personally liable for the Judgment, plus interest.

6.      Ordering the Defendants, jointly and severally, to pay to the Funds:  (i) all delinquent fringe benefit contributions owed that are not covered by the Judgment; (ii) interest on all delinquent fringe benefit contributions at the rate of ten percent (10%) per annum; (iii) liquidated damages equal to ten percent (10%) of the fringe benefits contributions due and late-paid; and (iv) the Funds' attorneys' fees and costs.

7.      Ordering Christopher Lumia to pay the Funds:  (i) all delinquent fringe benefit contributions owed that are not covered by the Judgment; plus (ii) the interest at the consolidated rate of return of the Funds' investments; plus (iii) the attorneys' fees and costs of collection; and (iv) to restore to the Funds any profits that Defendants made through use and retention of the assets of these Funds.

8.      Ordering the Defendants, jointly and severally, to submit the Companies' books and records to audit for all unaudited periods covered by this Complaint.

9.      Ordering the Defendants, jointly and severally, to remit:  (i) any delinquencies identified by the audits; (ii) interest on the delinquencies identified by the audits,

(iii) liquidated damages on the delinquencies identified by the audits; (iv) the cost of the audit;

and (iv) the attorneys' fees and costs associated with the audits.

10.     Entering judgment against the Defendants, jointly and severally as follows:

(a)     Judgment for any and all additional contributions and deductions that become due following commencement of the action or are determined to be due whether arising before or after commencement of the action, plus the applicable interest and liquidated damages as set forth herein;

(b)     A permanent injunction preventing and restraining the Defendants from breaching the CBA, Trust Agreements, and Collections Policy by which they are bound; and

(c)     A permanent injunction directing the Defendants to perform and continue to perform their obligations to the Plaintiffs, specifically, directing them to timely furnish the required monthly remittance reports and payments to Plaintiffs, and to provide the Plaintiffs, upon demand and at Defendants' expense, access to the books and records for an audit and examination relating to the employment of its employees, including but not limited to weekly payroll reports, payroll journals and quarterly employer reports for various federal and state agencies.

11.     Providing such other legal and equitable relief as the Court deems proper.

Dated: New York, New York
        March 19, 2020

/s/ Michael S. Adler
Michael S. Adler
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
Telephone: (212) 356-0251
madler@cwsny.com

Attorneys for Plaintiffs